**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | Case No. 10-00878-hb |
| Carolina Seafood, Inc. - South, | |
| | Chapter 11 |
| Debtor. | |

### PLAN OF REORGANIZATION

Carolina Seafood, Inc. - South, a South Carolina corporation, the above Debtor, herewith proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101, *et seq.*

### ARTICLE I
### DEFINITIONS

All terms and definitions as set forth in Title 11 of the United States Code, and as supplemented herein, shall be used and apply exclusively for this Plan of Reorganization of Carolina Seafood, Inc. - South, a South Carolina corporation, EXCEPT THAT Capitalized Terms shall have the following meanings:

1.    THE COURT is the United States Bankruptcy Court for the District of South Carolina.

2.    THE CODE is 11 U.S.C. § 101, *et seq.*, the Bankruptcy Code of 1978, as Amended.

3.    THE RULES mean, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

4.    THE DEBTOR is Carolina Seafood, Inc. - South, a South Carolina corporation, the Debtor-in-Possession in these proceedings under the Code.

5.    CHAPTER 11 is 11 U.S.C. §§ 1101, *et seq.*, the reorganization Chapter of the Code. The purpose of this Chapter 11 is to structure the sale of the assets of the Debtor, to ensure the maximum return for its creditors, and to reorganize and recast the debts of the Debtor.

6.    CHAPTER 7 is a hypothetical case which is administered under 11 U.S.C. §701, *et seq.*, wherein a corporation, identical to the Debtor, with identical assets and liabilities, has its assets liquidated.

7.    THE CASE is this proceeding under Chapter 11 of the Bankruptcy Code, brought by the Debtor for reorganization of its finances.

8.    SCHEDULES mean the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtor, as required by section 521 of the Code and the official bankruptcy forms, as the same may have been or may be amended, modified, or supplemented.

9. THE FILING DATE is February 10, 2010.

10. CAUSES OF ACTION means all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims, or any other claims whatsoever of the Debtor, the Debtor-in-Possession and/or the Estate that are or may be pending on the Effective Date or instituted by the or the Liquidating Trust Committee after the Effective Date against any Person or Entity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, suspected or unsuspected, whenever arising, whether prior to, on or after the Effective Date, and of any character or kind whatsoever, whether based in contract, in tort, or otherwise, at law or in equity or under any other theory of law, including, but not limited to, (a) those actions discussed in the Disclosure Statement or Plan, (b) all Claims, actions, avoiding powers, rights of recovery, subordination rights or other actions against insiders and/or any other Persons or Entities under the Bankruptcy Code, including sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer or preference laws, (c) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (d) the right to object to Claims or interests, (e) claims pursuant to section 362 of the Bankruptcy Code, (f) such claims and defenses as fraud, mistake, duress, usury, and any other theory, without limitation.

11. THE PLAN is this Plan of Reorganization of the Debtor under Chapter 11, filed with the Court on June 23, 2010, as it may from time to time thereafter be amended or supplemented; together with the exhibits here and thereto.

12. LIQUIDATION VALUE is the value determined by the Debtor for the value of the assets of the Debtor.

13. REAL ESTATE LEASE are those leases of real estate, with improvements, in North and South Carolina.

13.1. Lease 8069 is that sublease, between LJS Corp. and the Debtor, dated 09/01/99, ending on 08/31/19, for a Long John Silver's fast-food restaurant at 100 Garner Road in Spartanburg, South Carolina.

13.2. Lease 8070 is that sublease, between LJS Corp. and the Debtor, dated 09/01/99, ending on 08/31/19, for a Long John Silver's fast-food restaurant at 693 Oak Street in Forest City, North Carolina.

13.3. Lease 8071 is that lease, between Superior Properties and the Debtor, dated 06/15/09, ending on 06/15/29, for a Long John Silver's fast-food restaurant at 781 Biltmore Road in Asheville, North Carolina.

13.4. Lease 8072 is that lease, between CNL Income Funds and the Debtor, dated 08/03/93, ending on 08/03/13, for a Long John Silver's fast-food restaurant at 800 Brevard Road in Asheville, North Carolina.

13.5. Lease 8073 is that lease, between Roberson Family Rentals and the Debtor, dated 12/20/93, ending on 12/20/13, for a Long John Silver's fast-food restaurant

at 954 Patton Avenue in Asheville, North Carolina.

      13.6.    Lease 8074 is that lease, between Boyd Hyder and the Debtor, dated 10/17/77, ending on 10/31/12, for a Long John Silver's fast-food restaurant at the Four Seasons Shopping Center in Hendersonville, North Carolina.

      13.7.    a. Lease 8075a is that building lease, between Satilla Investments and the Debtor, dated 08/19/04, ending on 12/04/24, for a Long John Silver's fast-food restaurant at 104 East Blackstock Road in Spartanburg, South Carolina.

      b. Lease 8075b is that ground lease, between LJS Corporation and the Debtor, dated 08/03/03, ending on 08/03/13, for a Long John Silver's fast-food restaurant at 104 East Blackstock Road in Spartanburg, South Carolina.

      13.8.    Lease 8158 is that lease, between Satilla Investments I, LLC and the Debtor, dated 10/06/03, for a Long John Silver's fast-food restaurant at 109 Windslow Avenue in Gaffney, South Carolina. This lease has been rejected.

      13.9.    Lease 8188 is that lease, between Satilla Investments I, LLC and the Debtor, dated 01/06/03, ending on 08/08/23, for a Long John Silver's fast-food restaurant at 1409 West Wade Hampton Boulevard in Greer, South Carolina.

      13.10.    Lease 31002 is that lease, between Satilla Investments I, LLC and the Debtor, dated 10/19/04, for a Long John Silver's fast-food restaurant at 1513 Poinsett Highway in Greenville, South Carolina. This lease has been rejected.

      13.11.    Lease 31479 is that lease, between Milton Trotter and the Debtor, dated 04/01/94, ending on 04/01/14, for a Long John Silver's fast-food restaurant at 201 South Main Street in Mauldin, South Carolina.

      13.12.    Lease 31484 is that lease, between LJS Corporation and the Debtor, dated 09/01/99, ending on 08/31/19, for a Long John Silver's fast-food restaurant at 121 East Shockley Ferry Road in Anderson, South Carolina.

      13.13.    Lease 31485 is that lease, between Town N Country Realty and the Debtor, dated 05/01/86, ending on 04/30/11, for a Long John Silver's fast-food restaurant at 6099 Calhoun Memorial Highway in Easley, South Carolina.

      13.14.    Lease 31486 is that lease, between LJS Corporation and the Debtor, dated 09/01/99, ending on 08/31/19, for a Long John Silver's fast-food restaurant at 3314-A North Main Street in Anderson, South Carolina.

      13.15.    Lease 31487 is that lease, between LJS Corporation and the Debtor, dated 09/01/99, ending on 08/31/19, for a Long John Silver's fast-food restaurant at 6104 White Horse Road in Greenville, South Carolina.

    14.  PERSONALTY LEASE are those leases of personal property, being utilized in the Debtor's locations in North and South Carolina.

3

14.1.    HEADSET LEASE is GreatAmerica Leasing Corporation, for the lease of a Headset Ordering System for Drive-through Ordering, for Store No. 31484.

14.1.1.  The Debtor owed, as of the commencement of the Case, $15,097.14 on the Headset Lease.

15.    FRANCHISES are, collectively, those licenses, issued to the Debtor, bearing various dates and for various locations, under which the Debtor operates its fast-food restaurants.

15.1.    LJS FRANCHISES are those franchise agreements between Long John Silver's, Inc., and the Debtor, authorizing the Debtor to utilize the trade name "Long John Silver's" and hold itself out as a Long John Silver's fast-food restaurant, and to utilize the proprietary use of the theme and foodstuffs, for Stores Nos. 8069, 8070, 8072, 8073, 8074, 8075, 8188, 31479, 31484, 31485, 31486, 31487 and 31839.

15.2.    A&W FRANCHISES are those franchise agreements between A&W Restaurants, Inc., and the Debtor, authorizing the Debtor to utilize the trade name "Long John Silver's", and the proprietary use of the theme and foodstuffs, and hold itself out as a Long John Silver's fast-food restaurant, for Stores Nos. 8073, 8075, 8188, 31479, 31485, 31486 and 31487.

15.3.    UNITED CLAIM are, jointly, those claims held by United Food Service Purchasing Co-op, L.L.C., for specialized equipment purchased by the Debtor pursuant to that purchasing program that is mandated by the LJS Franchises and the A&W Franchises, and utilization of (and purchase of) such a condition of retention of the LJS and A&W Franchises.

16.   CLAIM is any right held by any party to receive payment from the Debtor, as that term is defined in the Code.

16.1.    IMPAIRED CLAIM is any Allowed Claim or Interest that does not receive the full amount of the indebtedness owed it by the Debtor.

16.2.    UNIMPAIRED CLAIM is any Allowed Claim or Interest that receives the full face amount of its adjusted claim.

17.   CLASS OF CLAIMS is a grouping of adjusted claims or interests that are substantially identical in kind or nature.

17.1.    IMPAIRED CLASS is that class of claims that are given less than the full amount of their allowed claims.

17.2.    UNIMPAIRED CLASS is any class of claims that is not affected by the Plan, or which shall receive under the Plan full payment of its claims with the Debtor.

18.   ALLOWED CLAIM is:

18.1.    a Claim that has been listed by the Debtor on its Schedules as other than disputed, contingent, or unliquidated, to the extent that it is not otherwise a Disputed Claim;

18.2.    a Claim for which a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, to the extent that it is not otherwise a Disputed Claim; or

19.   a Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Debtor or the , as applicable, and the Claim holder; (ii) in any contract, instrument, or other agreement entered into in connection with the Plan; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan.

20.   ADJUSTED CLAIM is any Allowed Claim or Interest after it has been modified as specified hereinafter.

21.   CONTINGENT CLAIM is any Allowed Claim or Interest against the Debtor which—if the Debtor continues business—would be satisfied in the normal course of the business of the Debtor.

22.   SECURED CLAIM is each allowed, adjusted claim, fully or partially secured by real estate mortgages, security agreements, chattel mortgages, lease-purchase agreements, liens, offsets or otherwise, and which is otherwise entitled to secured status under §506 of the Code. The defining of any individual creditor as a "First", "Second", etc., Mortgagee does not imply, for purposes of this Plan of Reorganization, any relative ranking of one secured creditor over another, except as set forth *supra.*

22.1.   FIRST LIENOR is, jointly, Community South Bank and Trust Co. and First National Bank of the South.

22.1.1.   Community South Bank and Trust Co holds a first lien on all FF&E in the Debtor's stores designated as Nos. 31479, 31485, 31486 and 31487, except as to the liens held by the Second and Third Lienor.

22.1.1.1.    Community South Bank and Trust Co is owed approximately $964,341.94, as of the commencement of the Case.

22.1.2.  First National Bank of the South holds first lien on all FF&E in the Debtor's stores designated as Nos. 8069, 8070, 8071, 8072, 8073, 8074, 8075, 8158, 8188 and 31002.

22.1.2.1.    First National Bank of the South is owed approximately $1,639,573.00, as of the commencement of the Case.

22.2.   SECOND LIENOR is BB&T Equipment Finance, which holds a first lien on Point of Sales Equipment located in ten (10) of the Debtor's stores.

22.2.1.  BB&T Equipment Finance is owed approximately $46,341.00, as of the commencement of the Case.

22.3.   THIRD LIENOR is GreatAmerica Leasing Corporation, which holds a lease-purchase on a Head-Set System for Drive-through Ordering at Store No. 31484.

22.3.1.  GreatAmerica Leasing Corporation is owed approximately $15,097.08 as of the commencement of this Case.

23.  PRIORITY CLAIM is each allowed, adjusted claim entitled to priority payment status under the Code.

23.1.  ADMINISTRATIVE CLAIM means a right to payment for costs and expenses of administration allowed under the Bankruptcy Code, including but not limited to:

23.1.1.  the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor;

23.1.2.  compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code;

23.1.3.  all claimants entitled to a priority payment under § 503(b)(9) and

23.1.4.  all fees and charges assessed against the Debtor's Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

23.2.  PAYROLL CLAIMS means all Claims of employees or former employees, for up to $10,000.00, that were earned by each individual claimant within 180 days prior to the Petition Date, for wages, salaries, or commissions, including vacation, severance, and sick leave pay, and that – on the Petition Date – were unpaid and have not (in the case of vacations) been utilized by the Claimant.

23.2.1.  ALLOWED PAYROLL CLAIM means any Payroll claim that is an Allowed Claim for such.

23.3.  401(K) CLAIMS means all Claims of employees, former employees, health care providers, or the Debtor's self-funded retirement plan.

23.3.1.  ALLOWED 401(K) CLAIM means any 401(k) Claim that is an Allowed Claim for such.

23.4.  AD VALOREM CLAIM means any claim for *ad valorem* taxes owed by the Debtor to any county or city taxing authorities.

23.5.  507(A)(8) CLAIM means any claim for other taxes owed by the Debtor that are afforded a claim under Section 507(a)(8) of the Code.

24.  UNSECURED CLAIM is each allowed, adjusted claim against the Debtor that is not otherwise a Secured, Priority Claim or Interest.

24.1.  SUBORDINATED UNSECURED CLAIM is each allowed, adjusted claim against the Debtor held by the holder of an Interest in the Debtor for monies advanced to or for the benefit of the Debtor which would otherwise be entitled to the status of either a priority or unsecured claim; it shall include any assignments of any such claims.

24.2.    SHAREHOLDER DEBT means the indebtedness of the Debtor to its sole shareholder, Michael P. Kern. Mr. Kern is owed $103,487.09.

25.    AN INTEREST is any right held by any party to claim equity ownership in the Debtor, whether actual, contingent, or equitable, and including (a) redemption, conversion, exchange, voting, participation, and dividend rights; (b) liquidation preferences; and (c) stock options and warrants.

26.    BAR DATE means the applicable bar date by which a Proof of Claim or Proof of Interest must be or must have been Filed if a creditor disputes the amount it is owed, as set forth in the Schedules and Statements of Affairs on file with the Court.

26.1.    THE NON-GOVERNMENTAL UNIT BAR DATE means June 17, 2010, the date noticed by the Court as the deadline for all governmental units to file a Proof of Claim in the Case.

26.2.    THE GOVERNMENTAL UNIT BAR DATE means August 9, 2010, the date noticed by the Court as the deadline for all non-governmental units to file a Proof of Claim in the Case.

27.    DISPUTED CLAIM means:

27.1.    if no Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtor's Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the , or any other party in interest has Filed an objection by the Claims Objection Bar Date, but only to the extent of the difference between the amount of the Claim listed in the Schedules and the amount of such Claim asserted in the objection, or (ii) a Claim that is listed on the Debtor's Schedules as disputed, contingent, or unliquidated; or

27.2.    if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection has been Filed by the Debtor, the or any other party in interest, as the case may be, by the Claims Objection Bar Date, if such objection has not been withdrawn or denied by a Final Order, but only to the extent of the difference between the amount of the Claim asserted in the proof of Claim and the amount of such Claim asserted in the objection.

27.3.    CLAIMS OBJECTION BAR DATE means the latest of: (a) 90 days after the Effective Date of this Plan of Reorganization; (b) 90 days after the Filing of a proof of Claim for such Claim, if filed AFTER the 90th day after the Effective Date of this Plan of Reorganization; (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to such Claims; and (d) such later date as provided for by order of the Bankruptcy Court, which order may be entered without further notice.

28.    DISPUTED CLAIMS RESERVE means the reserve established and maintained by an entity to be designated by Order of the Court to hold funds as necessary to satisfy all Disputed and other Claims as specified in the Plan.

29.   SUBSEQUENTLY ALLOWED CLAIMS means any Claim which becomes an Allowed Claim after the Confirmation Date.

30.   ACCEPTANCE of this Plan is based upon 50% affirmative vote in numbers and 67% affirmative vote, in Dollars, of each Class of Creditors whose indebtedness is impaired by this Plan.

31.   CONFIRMATION of this Plan is effective when the Order is entered by the Court implementing the Plan, after the Court finds that the Plan: (A) has been accepted by the requisite number of creditors eligible to vote therefore; (B) is feasible; (C) is fair and equitable; and (D) meets all of the other requirements of 11 U.S.C. §§1123 and 1129.

31.1.   CONFIRMATION DATE is that date upon which the Order of the Court is entered confirming this Plan of Reorganization of the Debtor.

31.2.   CONFIRMATION HEARING means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

31.3.   CONFIRMATION ORDER means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

32.   CST means Carolina Seafood South, Inc. – Tennessee, a Tennessee corporation, a sister corporation that the Debtor owes more than $350,000.00.

33.   EFFECTIVE DATE of the Plan is the First working day of the first full month immediately following the Confirmation Date.

34.   PLAN DISTRIBUTION DATE is the date upon which all Notes shall be distributed to the Creditors of the Debtor under the Confirmed Plan; it shall occur not later than forty-five (45) days after the Effective Date.

35.   MERGER shall mean the Q-Sub-S merger of the Debtor into CST.

36.   MERGER DATE shall mean the first working day of the first month of 2011.

37.   CONSUMMATION of the Plan shall occur on the Merger Date.

## RULES OF INTERPRETATION

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to any Entity as a holder of a Claim includes that Entity's successors, assigns, and affiliates; (e) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (f) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections

are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules, and (i) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

## COMPUTATION OF TIME

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply, unless specifically altered in this Plan.

## ARTICLE II
## CLASSIFICATION OF CREDITORS
## PAYMENT OF CREDITORS IN EACH CLASS

## CLASSIFICATION OF CREDITORS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Article III, have not been classified and thus are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that the remainder of the Claim or Interest qualifies within the description of such other Classes.

The classification of Claims against and Interests in the Debtor pursuant to this Plan is as follows:

1. CLASS I. Class I consists of the First, Second and Third Lienors.

2. CLASS II. Class II consists of the holders of Claims entitled to payment pursuant to 11 U.S.C. §503(b)(9).

3. CLASS III. Class III consists of Administrative Claims, Statutory Fee Claims, 401(k) Claims, Section 507(a)(8) Claims, Vacation Claims and Payroll Claims.

4. CLASS IV consists of the holders of all *ad valorem* Claims.

5. CLASS V. Class V consists of the holders of all Franchise Claims.

6. CLASS VI. Class VI consists of the holders of unrejected Real Estate Leases.

7. Class VII. Class VII consists of all assumed Executory Contracts and all assumed Franchises – inclusive, without limitation, of the LJS Franchise, the A&W Franchise, and the United Claim.

8. CLASS VIII. Class VIII consists of all Unsecured Claimants (excluding Class VI Claimants) holding allowed unsecured claims for $4,000.00 or less; or who consent to reduce their claims to $4,000.00, if their claim is greater than $4,000.00. Class VIII is an administrative convenience class.

8. CLASS IX. Class IX consists of the holders of all Unsecured Claims greater than $4,000.00 (that have not consented to reduce their claim to $4,000.00, and excluding Class VI Claimants), but less than $250,000.00 in face amount.

9

9. Class X. Class X consists of the holders of all Unsecured Claims greater than $250,000.00 in face amount, excluding Class VI Claimants.

10. Class XI. Class XI consists of CST.

11. Class XII. Class XII consists of Shareholder Debt.

12. Class XIII. Class XIII consists of Interests.

### III. PLAN OF REORGANIZATION
### AND
### PAYMENT OF CREDITORS IN EACH CLASS

#### PAYMENT OF CREDITORS IN EACH CLASS

The Allowed Claims and Interests are classified herein, and the resulting Classes shall be impaired or shall remain unimpaired, as follows:

**CLASS I**: The claims of Class I shall be allowed in their principal balances as of the Effective Date.

 a. The Debtor shall, through the Merger date, continue to make the regular payments on the notes between it and each Class I Creditor.

 b. The note and security agreement between the holder of each Class I claim and the Debtor shall be assumed by CST, and it shall become a co-obligor with the Debtor on the indebtedness.

 c. CST shall execute new Forms UCC-1, for filing with the Offices of the Secretaries of State for North Carolina and South Carolina.

 d. The Debtor shall continue paying the Class I creditor according to the presently-existing terms and conditions of the notes and security agreements (or lease-purchases) between each holder of a Class I claim and the Debtor, until the Merger is consummated.

 e. After the Merger, CST shall make all future paymenhts to the Class I Creditor.

 f. Upon full and complete payment of the underlying indebtedness owed to each Class I creditor, the security agreement collateralizing such note shall be deemed satisfied, and released.

*Class I is UNIMPAIRED, and the holders of Claims in this Class are not entitled to vote to accept or reject this Plan. Each Claim in Class I shall be deemed to constitute a subclass for distribution purposes.*

**CLASS II:** The claims of Class II shall be allowed in their principal balances as of the Effective Date.

a.       Those Class II claimants that have been paid in full pursuant to previous Orders of the Court shall receive no further disbursements from the Estate.

b.       Those Class II claimants that have not been paid in full shall be paid in full their claims on the Effective Date.

*Class II is UNIMPAIRED, and the holders of Claims in this Class are not entitled to vote to accept or reject this Plan. Each Claim in Class II shall be deemed to constitute a subclass for distribution purposes.*

**CLASS III:** The holders of Allowed Class III claims shall be allowed in their Adjusted Claim amount, as of the Effective Date, as follows:

a.       Administrative Claims, including Administrative Fee Claims, shall be paid in full as approved by the Court.

b.       Statutory Fee Claims shall be paid in full as and when assessed by the Office of the United States Trustee.

c.       Section 401(k) Claims and Payroll Claims shall be paid in full in the ordinary course of the Debtor's business.

d.       Vacation Claims shall be honored in the ordinary course of the Debtor's business; and to the extent that any existed on the Filing Date, shall be honored as used by the Employees.

e.       Section 507(a)(8) Claims shall be paid in full in their Allowed Amount on the Effective Date, or on the 11th full day after the final, unnappealable Order setting such allowed amount of such claims.

BAR DATES FOR ADMINISTRATIVE CLAIMS: The holder of an Administrative Claim, other than (i) a Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by the Debtor (and not past due), (iii) an Administrative Claim that has been Allowed on or before the Effective Date, (iv) Statutory Fees, or (v) a Vacation Claim, must file with the Bankruptcy Court and serve on the Debtor and the Office of the United States Trustee, a request for payment of such Administrative Claim within thirty (30 days) after service of notice of entry of the Confirmation Order. Such request must include at a minimum (A) the name of the holder of the Claim, (B) the amount of the Claim, and (C) the basis of the claim.

**Failure to File and serve such request timely and properly shall result in the Administrative Claim being forever barred and discharged unless otherwise ordered by the Court.**

Bar Date for Fee Claims for Professionals or other Entities asserting a Fee Claim for Services Rendered before the Effective Date: Such Professionals and Entities must File and serve on the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 60 days after the Effective Date.

> **Failure to File timely and serve such application shall result in the
> Fee Claim being forever barred and discharged unless otherwise
> ordered by the Court.**
>
> Objections to any Fee Claim must be Filed and served on the parties that were
> served with such application and the requesting party by the later of (A) 90 days
> after the Effective Date; (B) 90 days after the filing of the applicable request for
> payment of the Fee Claim; or (C) such later date as provided for by order of the
> Bankruptcy Court.

*Class III is UNIMPAIRED, and the holders of Claims in this Class are not entitled to vote to
accept or reject this Plan. Each Claim in Class III shall be deemed to constitute a subclass for
distribution purposes*

**CLASS IV:** The holders of Allowed Class IV Claims shall be allowed in their Adjusted
Claim amount, as of the Effective Date, as follows:

> a.      Subrogated *ad valorem* claims shall be paid in full upon the
> Effective Date.
>
> b.      Unsubrogatged *ad valorem* claims shall be paid in full in their
> Allowed Amount on the Effective Date, or on the 11th full day after the final,
> unnappealable Order setting such allowed amount of such claims.

*Class IV is UNIMPAIRED, and the holders of Claims in this Class are not entitled to vote to
accept or reject this Plan. Each Claim in Class IV shall be deemed to constitute a subclass for
distribution purposes.*

**CLASS V:** The holders of Allowed Class V Claims shall be allowed in the amounts as set
forth in the Motion to Assume Franchise Agreements.

*Class V is UNIMPAIRED, and the holders of Claims in this Class are not entitled to vote to
accept or reject this Plan. Each Claim in Class V shall be deemed to constitute a subclass for
distribution purposes.*

**CLASS VI:** The holders of Allowed Class VI Claims shall be allowed in the amounts as
set forth herein:

> a.      To the extent that any of the Class VI Claimants have agreed, in
> writing, to a treatment that differs from full repayment of any pre-petition rent
> upon assumption of that lease, such Class VI Claimant shall be paid the agreed-
> upon amount upon the Effective Date, or entry of the final, unappealable Order
> of the Court confirming such agreement.
>
> b.      To the extent that any of the Class VI Claimants have not agreed
> to a treatment that differs from full repayment of any pre-petition rent upon
> asumption of that lease, such Class VI Claimant shall be paid the full amount of
> its Adjusted Claim upon the Effective Date, or entry of the final, unappealable
> Order of the Court confirming such agreement.

*Class VI is UNIMPAIRED, and the holders of Claims in this Class are not entitled to vote to accept or reject this Plan. Each Claim in Class VI shall be deemed to constitute a subclass for distribution purposes.*

    **CLASS VII:** All Class VII Creditors shall be:

        a.      Paid the full amount of their claim, upon consummation, pursuant to the terms of their Executory Contract with the Debtor, in the ordinary course of business, from future profits of the Debtor; or

        b.      If an individual claimant agrees, in writing, to differing treatment and payment in a lesser amount, pursuant to the terms of that differing treatment, and pursuant to past or future Court order authorizing such assumption.

Class VII is UNIMPAIRED.

    **CLASS VIII:** All Class VIII Creditors, shall be:

        a.      Paid the full amount of their Adjusted Claim, or $4,000.00, whichever is the lesser, in full satisfaction of their Claim.

*Class VIII May Be IMPAIRED. To the Extent that Any Class VIII Creditor has a claim of over $4,000.00, and elects to reduce its claim to $4,000.00, such holder of such Claim in this Class is entitled to vote to accept or reject this Plan. Each Claim in Class VIII shall be deemed to constitute a subclass for distribution purposes.*

    **CLASS IX:** The holders of Allowed Class IX claims shall be allowed in their Adjusted Claim amount.

        a.      Each Class IX Claimant shall receive, upon the fifth business day after the Merger Date, $4,000.00.

        b.      On the fifth business day after the Merger Date, or upon the entry of the final, unappealable Order of the Court determining the amount of any challenged Class IX Claim, each Class IX Claimant shall receive the Class A Note of CST for Ninety **(90%) per cent** of their Adjusted and Allowed Claim, net of the $4,000.00 payment previously made.

        c.      Class A Notes shall be paid as set forth in that Note, over a period of sixty (60) Months, in equal monthly installments, and shall be substantially in form as set forth in Exhibit A hereto.

*Class IX is IMPAIRED, and the holders of Claims in this Class are entitled to vote to accept or reject this Plan. Each Claim in Class IX shall be deemed to constitute a subclass for distribution purposes.*

    **CLASS X:** The holders of Allowed Class X claims shall be allowed in their Adjusted Claim amount.

        a.      Each Class X Claimant shall receive, upon the fifth business day after the Merger Date, $4,000.00.

        b.      On the fifth business day after the Merger Date, or upon the entry of the final, unappealable Order of the Court determining the amount of any

challenged Class X Claim, each Class X Claimant shall receive the Class A Note of CST for Two Hundred Twenty-One Thousand Four Hundred ($221,400.00) Dollars.

      i.     Class A Notes shall be paid as set forth in that Note, and shall be substantially in form as set forth in Exhibit A hereto.

      c.     On the fifth business day after the Merger Date, or upon the entry of the final, unappealable Order of the Court determining the amount of any challenged Class X Claim, each Class X Claimant shall receive the Class B Note of CST for One Hundred Fifty-Nine Thousand Seven Hundred thirty-One and 21/100($159,731.21) Dollars.

      i.     Class B Notes shall be paid as set forth in that Note, over a period of sixty (60) Months, in equal monthly installments, and shall be substantially in form as set forth in Exhibit B hereto.

*Class X is IMPAIRED, and the holders of Claims in this Class are entitled to vote to accept or reject this Plan. Each Claim in Class X shall be deemed to constitute a subclass for distribution purposes.*

**CLASS XI:** The claim of the Class XI Creditor shall be converted to stock of the Debtor. It shall not be entitled to receive any dividends until all debt of the Debtor has been paid pursuant to this Plan.

*Class XI is IMPAIRED. Class XI Claimants are not entitled to vote to accept or reject the Plan.*

**CLASS XII:** The claim of the Class XII creditor shall be paid Zero. The indebtedness shall be expunged.

*Class XII is IMPAIRED. Class XII Claimants are not entitled to vote to accept or reject the Plan.*

**CLASS XIII:** The claim of the Class XIII creditor shall be paid Zero. The indebtedness shall be expunged.

*Class XIII is IMPAIRED. Class XIII Claimants are not entitled to vote to accept or reject the Plan.*

### RESTRUCTURING OF DEBTOR

The Debtor shall, upon confirmation, commence challenging claims that it considers to be overstated, duplicative, misclassified, or otherwise suspect. All claims challenges shall be filed no later than Thirty (30) days after the Effective Date.

The Debtor shall, on the Effective Date, cancel of record all outstanding shares of stock, and reissue 100 shares of new stock in the name of CST. The indebtedness of CST owed by CSS shall remain until the Merger Date.

CST, as the new shareholder, shall immediately appoint a new board of directors for CSS. The new board of directors of CSS shall then complete all steps necessary to consummate

the Plan of Reorganization, including directing settlement and/or compromise of any and all claims, without further order or approval.

CSS shall prepare Class A and Class B Notes; and shall ensure that CST is a co-obligor thereon. CSS shall take such steps as are necessary to substitute CST as the Maker of the notes of all Class I Creditors, and execute such documents as are necessary to continue those Security Agreements, and their perfection.

Upon Confirmation, CSS shall create the Surplus Fund Account, and CSS shall commence depositing funds in it equal to the amounts necessary to (a) fund the cash payments mandated by the Plan, and (b) payments that are called for under the Class A and Class B Notes. On the Plan Distribution Date, CSS shall distribute the cash called for in this Plan of Reorganization to all of its unsecured creditors; CSS shall distribute the Class A and Class B Notes to the Creditors entitled thereto; and shall send, with the notes, the monthly payments that have accrued to the date of the transfer of the notes.

Upon the Merger Date, the board of directors of CSS shall execute such documents, and take such steps as are necessary for CSS to be merged into CST; and shall file the application of CSS for entry of a Final Decree in this Case.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN OF REORGANIZATION

A.      VOTING CLASSES: Holders of Claims in Classes VIII, IX and X are impaired under the Plan, and, thus, are entitled to vote to accept or reject the Plan. Classes I - VII are unimpaired and therefore are not entitled to vote. Holders of Interests and Insider Claims in Classes XI and XII are not entitled to vote to accept or reject the Plan.

B.      Class Acceptance Requirement: Only holders of Claims and Interests in a voting class eligible to vote as provided herein and in the Balloting Procedures Order, shall be entitled to vote to accept or reject the Plan. A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan

## ARTICLE V
## MEANS FOR IMPLEMEN TATION OF THE PLAN

### FUNDING OF THE PLAN

The funds required for the implementation of this Plan and the distributions hereunder shall be provided from the current and future operations of the Debtor, and of CST after the merger into it of the Debtor. CSS, CST and the merged CST shall make 120 monthly payments, commencing on the Plan Distribution date, and on the Fifteenth (15th) day of each succeeding month, to be paid *pro rata* against the Class A and Class B Notes, until paid in full on the 120th month.

### ARTICLE VI
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Acceptance of Executory Contracts:** On the Confirmation Date, all executory contracts and unexpired leases not previously assumed or rejected by the Debtor shall be automatically assumed by the Debtor without further notice or order, in accordance with the provisions of §§ 365, 1113, 1123, and any other relevant provisions of the Code, pursuant to the terms of any orders for payment, or subsequent agreement for payment of arrearages thereon.

**Bar Date for Rejection Claims** Each Person who is a party to an executory contract or unexpired lease previously rejected by the Debtor must comply with the applicable Bar Date, if any, established by the motion and order rejecting such executory contract or unexpired lease for Claims arising from the rejection.

**Each other Person who is a party to an executory contract or unexpired lease rejected by the Debtor, including those rejected under this Plan, must File, by not later than 30 days after notice of the entry of the Confirmation Order, a proof of Claim for damages alleged to arise from the rejection of such executory contract or unexpired lease, or be forever barred.**

A copy of such proof of Claim shall be served on the Attorney for the Debtor in accordance with the notice provisions of the Plan, not later than 30 days after notice of entry of the Confirmation Order. If the Claim becomes an Allowed Claim, then such Claim shall be classified as an Unsecured Claim and distributions shall be made in accordance with the provisions of the Plan.

### ARTICLE VII
### PAYMENT AND DISTRIBUTIONS ON CLAIMS

**Manner of Payment:** Any payment in Cash shall be made by check drawn on a domestic bank.

**Payment of Claims and Interests**: The Corporation and/or the Debtor shall make payment on Claims and Interests as follows:

1.    <u>Allowed.</u> As soon as practicable after the Effective Date, the Debtor shall commence payments to all Allowed Claims the amount provided in Article III of this Plan unless such holder and the Debtor have agreed or agree upon other terms more favorable to the Estate for the treatment of such Claim.

2.    <u>Disputed.</u> As soon as practicable after the Effective Date, the Corporation shall Reserve the amount of Cash necessary to pay all Disputed Claims the amount provided in Article III of this Plan. To the extent a Disputed Claim becomes an Allowed Claim, the claim shall be paid as an Allowed claim.

**No Interest or Attorneys' Fees:** Except as expressly stated in the Plan or as allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date, and no award or reimbursement of attorneys fees or related expenses or disbursements arising after the Petition Date shall be allowed on, or in connection with, any Class V or Class VI Claim. This provision shall apply whether the distribution on such Claim is made on the Effective Date or thereafter.

**Fractional Cents:** Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

**Distributions to the Last Known Address:** Distributions to holders of Allowed Claims will be sent to the last known address set forth on such holder's proof of Claim Filed with the Court, or on the Schedules, if no proof of Claim has been filed. Holders of Claims may change the address to which distributions, if any, will be sent by furnishing written notice to the Corporation. A proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date.

**Unclaimed Property:** If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto (including through failure to negotiate a check for distributions within 90 days of its date), such unclaimed property shall be forfeited by such holder whereupon all right, title and interest in and to the unclaimed property shall escheat to the Corporation for the benefit of other creditors and be held in reserve by the Corporation to be distributed to other Creditors in accordance with the Plan.

**Withholding or other Taxes:** Any federal, state, or local withholding or other taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

**Setoffs:** Subject to the limitations provided in §553 of the Code, the Debtor or the Corporation, as applicable, may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Corporation, as applicable, of any such claim or other claims, rights, or causes of action that the Debtor or the Corporation may have against such holder.

**Subordination Rights:** All subordination rights, claims, and defenses of the Debtor and Corporation shall remain valid, enforceable, and unimpaired in accordance with §510 of the Code or otherwise, except as otherwise specifically provided in this Plan.

## ARTICLE VIII
## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS RESERVE

**Allowance of Claims:** Except as expressly provided herein or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed allowed, unless and until such Claim is deemed Allowed under the Bankruptcy Code or agreed to be Allowed by the Debtor, by the Corporation in accordance with the Plan, or so ordered by Final Order of the Bankruptcy Court. Except as expressly provided in this Plan, the Corporation after Confirmation will have and retain any and all rights and defenses the Debtor had with respect to any Claims as of the Petition Date, including the Causes of Action referenced in this Plan and the Disclosure Statement and the Filing of any motions or other pleadings for estimation of the amount of Disputed Claims. All Claims of any Person or Entity that owes money to the Debtor shall be disallowed unless and until such Person or Entity pays the full amount it owes the Debtor.

**Objections to Claims:** Except as otherwise specified herein, objections to Claims shall be Filed with the Bankruptcy Court and served upon the relevant Creditors by the Claims Objection Bar Date, which shall be no later than 90 days after the Effective Date or 90 days after such Claim is Filed, whichever date is later, provided however, that this deadline may be extended by the Bankruptcy Court upon motion of the Corporation. Distributions with respect to and on account of Claims to which objections have been filed will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order.

### Claim Resolution:

1.    Objections to Claims may be litigated to judgment, settled or withdrawn by the Corporation.

2.    Any proposed settlement of a Disputed Claim where the original face amount of the Claim is more than $10,000.00 shall be subject to the approval of the Bankruptcy Court, after 20-days notice and an opportunity for a hearing has been served on the Creditors and Parties in Interest.

3.    The Corporation may settle Claims where the original face amount of such Claim is between $200.00 and $10,000.00 without Bankruptcy Court approval.

4.    If the original face amount of the Disputed Claim is less than $20,000.00, the Corporation can settle such Claim without any notice or approval of any other party.

**No Distributions to Holders of Disputed Claims:** Notwithstanding any other provision of this Plan, no Cash or other Property shall be distributed under the Plan on account of any Disputed Claim.

**Disputed Claims Reserves:** On and after the Effective Date, the Corporation shall establish and maintain reserves for all Disputed Claims in the Surplus Funds Account. For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Debtor or the Corporation. If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash

held in reserve shall be distributed by the Corporation to the Creditor holding the Allowed Claim. The balance of such Cash, if any, remaining after all Disputed Claims have been resolved shall be distributed to the Surplus Fund in accordance with the Plan.

 **Estimation of Claims:** The Debtor or the Corporation may, at any time, request that the Court estimate any contingent or unliquidated Claim pursuant to §502(c) of the Code regardless of whether the Debtor or the Corporation previously have objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during the litigation concerning any objection to any Claims, including without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of §502(j) of the Code, in the event that the Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the Allowed amount of such Claim for the purposes of distribution of the Distributable Proceeds. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Corporation may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

### ARTICLE IX
### CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

 **Conditions to Confirmation:** The following are conditions precedent to Confirmation of the Plan:

 1. The Court shall have signed and the Clerk of the Court shall have entered an order granting approval of the Disclosure Statement and finding that it contains adequate information pursuant to §1125 of the Code, and such order shall have become a Final Order.

 2. The Confirmation Order, in form acceptable to the Debtor, shall have been signed by the Court and entered by the Clerk of the Court.

 **Conditions to Consummation:** The following are conditions precedent to the occurrence of the Effective Date:

 1. The Confirmation Order shall have become a Final Order; and

 2. The Surplus Fund Account shall have been created.

**Effect of Non-Occurrence of Effective Date:** If the Confirmation Order is vacated or revoked or the Effective Date does not occur for any other reason, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by, against, or Interests in, the Debtor; (2) prejudice in any manner the rights of the Debtor; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor in any respect.

## ARTICLE X
## EFFECTS OF CONFIRMATION

**Discharge of Debtor:** Upon the Merger Date, the Debtor shall be discharged of its debts pursuant to §1141 of the Code, except as to those preserved by, or created in, this Plan of Reorganization.

**Preservation of Causes of Action:** Upon the occurrence of the Effective Date, all Causes of Action of the Debtor shall be retained and preserved and shall vest in the Corporation as the Court-approved representative of the Estate under §1123(b)(3) and the deemed judicial substitute for the Debtor as the party-in-interest in the Chapter 11 Case, under the Plan or in any judicial proceeding or appeal to which the Debtor is a party, consistent with §1123(b)(3)(B) of the Code, and the Corporation shall have the power and right to commence any Causes of Action notwithstanding confirmation of the Plan.

Potential Causes of Action, which may but need not be pursued by the Debtor prior to the Effective Date and by the Corporation after the Effective Date as warranted include, without limitation, the following:

1.      Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtor's businesses or operations, including, without limitation, the following: possible claims against vendors, landlords, sublessees, assignees, customers or suppliers for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues and collections/account receivables matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other Person or Entity; employee, management or operational matters; claims against landlords, sublessees and assignees arising from the various leases, subleases and assignment agreements relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance and other similar charges; financial reporting; environmental, and product liability matters; actions against insurance carriers relating to coverage, indemnity or other matters; actions against current or former officers, directors, employees, parents, subsidiaries, affiliates, or tax or pension or other control group members; counterclaims and defenses relating to notes or other obligations; contract or tort claims which may exist or subsequently arise, including any Cause of Action against MidCoast;

2.      Any and all avoidance actions pursuant to any applicable section of the Code, including, without limitation, §§ 544, 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Code, and other similar state laws such as fraudulent conveyance and preference statutes, arising from any transaction involving or concerning the Debtor; and

3.      In addition, there may be numerous other Causes of Action which currently exist or may subsequently arise that are not set forth herein or in the Disclosure Statement because the facts upon which such Causes of Action are based are not currently or fully known by the Debtor and, as a result, cannot be raised during the pendency of the Chapter 11 Case (collectively, the "Unknown Causes of Action"). The failure to list any such Unknown Cause of Action herein or

in other Plan documents is not intended to limit the rights of the Corporation to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action subsequently become fully known to the Debtor or the Corporation or other parties in interest.

4.    Unless Causes of Action against a Person or Entity are expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves all Causes of Action and Unknown Causes of Action, including the Causes of Action described herein, as well as any other Causes of Action or Unknown Causes of Action, for later adjudication and therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan. In addition, the Debtor expressly reserves the right to pursue or adopt (and the right of the Corporation to do so) any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, including the lawsuits described in the Disclosure Statement, against any Person, including, without limitation, the plaintiffs and co-defendants in such lawsuits.

5.    Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with §1123(b)(3) of the Code, any Claims, rights, and Causes of Action that the Debtor or the Estate may hold against any Person or Entity shall vest in the Corporation, and the Corporation shall have the right to exclusively enforce, as the authorized representative of the Debtor and the Estate, any and all such Claims, rights, or Causes of Action. The Corporation may pursue any and all such Claims, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Creditors who are the beneficiaries of the Plan. Subject to the provisions of the Plan, the Corporation shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Claims, rights, and Causes of Action. Entry of the Confirmation Order shall serve as express approval by the Bankruptcy Court of the section 1123(b)(3) appointments of the Corporation as set forth above.

**INJUNCTION: FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING ANY SUIT, ACTION OR OTHER PROCEEDING AGAINST CSS, CST OR THE PROPERTY OF CSS, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION OR INTEREST ADDRESSED UNDER THIS PLAN. UPON CONFIRMATION OF THE PLAN, EACH HOLDER OF ANY CLAIM AND ALL CREDITORS AND OTHER PERSONS AND ENTITIES WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THE INJUNCTIONS SET FORTH IN THIS PLAN.**

## Liability of Debtor and Corporation

Except as otherwise provided in the Plan, (1) the rights afforded in the Plan and the treatment of all Claims and Interests herein, shall be in exchange for and in complete satisfaction, and release of Claims against the Debtor and Interests of any nature whatsoever, including any interest accrued on such Claims against the Debtor from and after the Petition Date, against the Estate, its Property, or the Corporation's Assets; (2) this Plan shall bind all holders of Claims against, and Interests in, the Debtor and Debtor-in-Possession, and the liability of the Estate, its Property, and the Corporation's Assets shall be as limited herein; (3) on the Effective Date, all such Claims against, and Interests in the Debtor shall be modified and satisfied as provided herein; and (4) all Person and Entities shall be precluded from asserting against the Estate, the Corporation, the Corporation's Property or any of their successors or assigns or their assets or

properties any other or further Claims against the Debtor or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and is addressed in this Plan other than as expressly provided herein.

> ## Upon the Effective Date of the Plan, the Debtor shall be deemed
> ## to have received its Discharge under 11 U.S.C. §1141(c).

### ARTICLE XI
### RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan and have been made and performed by the Corporation and the Chapter 11 Case is closed by Final Decree, the Bankruptcy Court shall have and retain the maximum jurisdiction as is legally permissible, including, without limitation, jurisdiction over the Estate, the Debtor, Property, the Corporation, and the Corporation's Assets, and including, without limitation, jurisdiction for the following purposes:

1.      CLAIMS: To determine the allowability, classification, validity, priority of, or any dispute with respect to Claims against the Debtor upon motion by the Corporation or any other party in interest;

2.      INJUNCTION, ETC.: To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Entity;

3.      PROFESSIONAL FEES: To determine, before or after the Effective Date, any and all applications for allowance of compensation and expense reimbursement of professionals for services rendered before the Effective Date, as provided for in the Plan;

4.      CERTAIN PRIORITY CLAIMS: To determine any Priority Tax Claims, Non-Tax Priority Claims or any request for payment of Administrative Claims;

5.      DISPUTE RESOLUTION: To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of professional fees and expenses of the Corporation;

6.      LEASES AND EXECUTORY CONTRACTS: To determine the allowance of any Claims or other disputes resulting from the rejection of executory contracts and unexpired leases;

7.      ACTIONS: To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Chapter 11 Case, including the determination of all controversies and disputes arising under and in connection with the Debtor's Property, the Causes of Action, and including any remands;

8.  PLAN MODIFICATION: To modify the Plan under § 1127 of the Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

9.  AID CONSUMMATION: To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

10.  IMPLEMENTATION OF CONFIRMATION ORDER: To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

11.  GENERAL MATTERS: To determine all such other matters, and for such other purposes, as may be provided in the Confirmation Order, the Plan, or any documents executed in connection with the foregoing, or as otherwise may be authorized or not inconsistent with the provisions of the Bankruptcy Code;

12.  FINAL DECREE: To enter a Final Decree closing the Chapter 11 Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**Pre-Confirmation Modification:** The Plan may be altered, amended or modified by the Debtor before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

**Post-Confirmation Immaterial Modification:** The Debtor or the Corporation may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, but with notice to and the consent of each other, insofar as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

**Post-Confirmation Material Modification:** The Plan may be altered or amended after the Confirmation Date by the Debtor, Corporation in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing as provided in section 1127 of the Bankruptcy Code.

**Withdrawal or Revocation of the Plan:** The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred as further provided in this Plan.

**Exemption from Transfer Taxes:** Pursuant to section 1146(c) of the Bankruptcy Code, the Confirmation Order, and any sale orders entered in the Chapter 11 Case, the transfer or making or delivery of any instrument whatsoever in furtherance of or in connection with the Plan and the Liquidating Trust including, subsequent transfers to Creditors or purchasers, and any assignments, documents, instruments and agreements and other conveyance documents executed and delivered by the Debtor or the Corporation in connection with the Plan of

Reorganization, shall not be subject to any stamp, real estate transfer, personal property, recording or other similar tax.

**Final Decree:** Notwithstanding any other provision of this Plan, the Final Decree shall be entered only after all conditions precedent to substantial consummation of this Plan have been satisfied or waived.

**Effectuating Documents, Further Transactions and Corporate Action:** The Debtor, the Corporation, all holders of Allowed Claims receiving distributions under this Plan, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan. Prior to, on or after the Effective Date (as appropriate), all matters provided for under this Plan that would otherwise require approval of the managers of the Debtor shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the state in which the Debtor is organized without any requirement of further action by the managers of the Debtor.

**Reservation of Rights:** Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Confirmation Order shall continue to be in effect. The filing of this Plan, any statement or provision contained in this Plan, or any document prepared in connection with the Plan, or the taking of any action by the Debtor or the Corporation, as the case may be, shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtor or the Corporation with respect to the holders of Claims or Interests or otherwise.

**Term of Existing Injunctions or Stays:** Unless otherwise provided in the Confirmation Order or herein, all injunctions or stays in effect in the Chapter 11 Case, pursuant to §§ 362 or 525 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Successors and Assigns:** The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entities.

### Governing Law:

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of South Carolina.

### Notices:

13.     All notices, requests or other communications, required or permitted to be made in accordance with this Plan, including any change of address of any Person for the purpose of receiving distributions, shall be in writing and shall be delivered (i) personally, (ii) by facsimile or email (confirmed by first class mail or express mail), or (iii) mailed by first class mail.

14.     Any such notice shall be deemed to have been given when received or, if mailed by first class mail, seven days after the date of mailing, postage prepaid, or, if

express mailed, the next business day after the date of mailing, or if sent by facsimile or email, upon confirmation of receipt by the recipient; provided, however, that a proper notice of change of address will be effective for a distribution only if received at least 30 days in advance of such distribution date.

If to CSS, at:

Michael P. Kern
617 Brixton Circle
Simpsonville, SC 29681

AND

Robert F. Anderson, Esquire
Anderson & Associates, P.A.
Post Office Box 76
Columbia, SC 29202-0076

If to CST, at:

Michael P. Kern
617 Brixton Circle
Simpsonville, SC 29681

AND

Robert F. Anderson, Esquire
Anderson & Associates, P.A.
Post Office Box 76
Columbia, SC 29202-0076

If to any holder of an Administrative Claim, a Priority Tax Claim or a Claim of any Class, at their last known address set forth on a proof of Claim filed with the Claims Agent, or on the Schedules, if no proof of Claim has been filed.

If to any other Persons entitled to notice, at the respective addresses that such Persons entitled to notice have provided to the Corporation.

Any party may change the address at which it is to receive notices under the Plan by furnishing written notice pursuant to the provisions of this Article to the Entity to be charged with knowledge of such changes.

**Conflicts:** To the extent any provision of the Disclosure Statement, and any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of this Plan, the terms and provisions of this Plan shall govern and control.

**Severability:** If any provision of this Plan is determined to be unenforceable in whole or in part, either facially or as applied, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan or require the re-solicitation of any acceptance or rejection of the Plan.

CAROLINA SEAFOOD, INC. – SOUTH
CAROLINA SEAFOOD, INC. - TENNESSEE

By:

Michael P. Kern,
Their: Chief Executive Officer
617 Brixton Circle
Simpsonville, SC 29681

ANDERSON & ASSOCIATES, P.A.

By:

Robert F. Anderson, Attorney for Debtor
District Court ID #1091
P.O. Box 76
Columbia, SC 29202-0076
(803) 252-8600 phone
(803) 256-0950 fax
bob@andersonlawfirm.net

June 23, 2010

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                              Case No. 10-00878-hb

Carolina Seafood, Inc. - South,                         **EXHIBIT**

                                    Debtor.          Chapter 11

### CLASS A PROMISSORY NOTE

$_____                        Simpsonville, South Carolina
                                       _____, 2010

FOR VALUE RECEIVED, the undersigned promise to pay to the order of
_____, at _____ _____, the sum of
_____($_____) Dollars, without interest, payable in Sixty (60) equal
monthly installments of _____($_____), until paid in full.

In the event any installment shall not be received by holder by the tenth day of the month when due, the undersigned shall pay to holder an additional charge of 5%, or $10.00, whichever is larger. It is agreed that in case of any default in any of the payments of interest or principal, that at the option of the Holder, the entire amount hereunder shall become due and payable.

The undersigned will also pay to holder any expenses to which it is put in collection of this note, including reasonable attorney's fees of not less than 10% of the balance due hereunder. Each party signing or endorsing this note waives presentment and notice of dishonor and agrees that the holder may, without notice and without releasing the liability of any of them, grant extension or renewals, add or release one or more parties, acquire additional security, or release any security. In the event of default, or if there be any default under any security agreement between the undersigned and the holder, this note shall become due at the option of the holder. In case action is brought on this note, it is agreed that venue of such action may be laid in Spartanburg County, South Carolina.

                         CAROLINA SEAFOOD, INC. - SOUTH

                         By: _____
                                Michael P. Kern its
                                Chief Executive Officer
                                617 Brixton Circle
                                Simpsonville, SC 29681

                         CAROLINA SEAFOOD, INC. - TENNESSEE

                         By: _____
                                Michael P. Kern, its
                                Chief Executive Officer
                                617 Brixton Circle
                                Simpsonville, SC 29681

# UNITED STATES BANKRUPTCY CRT

## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Carolina Seafood, Inc. - South,

                                        Debtor.

Case No. 10-00878-hb

**EXHIBIT**

Chapter 11

## CLASS B PROMISSORY NOTE

$_____  _____

Simpsonville, South Carolina
_____  _____, 2010

FOR VALUE RECEIVED, the undersigned promise to pay to the order of _____  _____, at _____  _____, the sum of _____  _____ ($_____) Dollars, without interest, payable in Sixty (60) equal monthly installments of _____ ($_____), until paid in full.

In the event any installment shall not be received by holder by the tenth day of the month when due, the undersigned shall pay to holder an additional charge of 5%, or $10.00, whichever is larger. It is agreed that in case of any default in any of the payments of interest or principal, that at the option of the Holder, the entire amount hereunder shall become due and payable.

The undersigned will also pay to holder any expenses to which it is put in collection of this note, including reasonable attorney's fees of not less than 10% of the balance due hereunder. Each party signing or endorsing this note waives presentment and notice of dishonor and agrees that the holder may, without notice and without releasing the liability of any of them, grant extension or renewals, add or release one or more parties, acquire additional security, or release any security. In the event of default, or if there be any default under any security agreement between the undersigned and the holder, this note shall become due at the option of the holder. In case action is brought on this note, it is agreed that venue of such action may be laid in Spartanburg County, South Carolina.

CAROLINA SEAFOOD, INC. - SOUTH

By: _____  _____

    Michael P. Kern, its
    Chief Executive Officer
    617 Brixton Circle
    Simpsonville, SC 29681

CAROLINA SEAFOOD, INC. - TENNESSEE

By: _____  _____

    Michael P. Kern, its
    Chief Executive Officer
    617 Brixton Circle
    Simpsonville, SC 29681